## JOHN G. PALFREY *vs.* CITY OF BOSTON.

United States internal revenue stamps are not subject to state or local taxation as property; nor, under the Gen. Sts. *c.* 11, § 12, as "stock in trade."

CONTRACT to recover the amount of a tax assessed by the defendants for the year ending May 1, 1867, and paid by the plaintiff under protest; submitted to the judgment of the court on these facts agreed :

"The plaintiff resides in Cambridge, and carries on, at an office hired by him for the purpose in Boston, the business of selling internal revenue stamps procured by him of the government of the United States, under the U. S. St. of 1864, *c.* 173, § 161; and the sum of money sought to be recovered was assessed upon him as an assessment upon his stock in trade in said business during said year."

*F. W. Palfrey,* for the plaintiff. The sale of internal revenue stamps is not made by law the duty of any government officer or other person; and no provision is made by law for their distribution and sale, other than making it worth the while of individuals to engage in the business by allowing to purchasers of stamps in amounts of not less than fifty dollars a sum not exceeding five per cent. upon the aggregate amount of such stamps, "as commission." See U. S. Sts. 1862, *c.* 119, § 102; 12 Sts. at Large, 477; 1863, *c.* 74, § 16; 12 Sts. at Large, 724; 1864, *c.* 173, §§ 161, 170; 13 Sts. at Large, 294, 297. The provisions of law on this subject now in force form part of an act entitled "an act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes;" and those persons who, including the plaintiff, voluntarily engage in the business of selling stamps, are, without being strictly and technically officers of the government, its agents, and valuable and important auxiliaries to it in the collection of its revenue. The government being thus dependent on volunteers for the distribution of stamps, any action of a state which tends to discourage such persons from engaging in the

business has a direct tendency to embarrass the collection of the revenue. The right to tax the stock in trade of a person engaged in this business, once conceded to a state, carries with it the right to so burden the business as to· cause volunteers to abandon it, and thus deprive the government of the services of numerous distributing agents, at present rendered without cost to the government.

They once out of the business, there would remain no class of individuals, and not an individual, (unless the commissioner of internal revenue at Washington,) upon whom would rest the duty of distributing stamps. And suppose the commissioner should, in the event of such taxation by a state as to drive all the volunteers out of the business, pronounce that in his judgment the facilities for the distribution of stamps in all the collection districts of that state were insufficient, and express a readiness to make to officers named in the St. of 1864, *c.* 173, § 170, the delivery of stamps without prepayment, which he is therein authorized (not required) to make in such case, it is to be remarked that he need not make any such delivery until he has secured himself by a bond, which the officers may not find it convenient or agreeable to give; that none of the officers (collectors and assessors of internal revenue, assistant treasurers, designated depositaries, and postmasters) are under any obligation to accept the commissioner's proposal to them to become sellers of stamps, or to obey any order of the commissioner, except perhaps the collectors and assessors and their deputies; that, supposing the distribution by way of sale by the officers named to be sufficient to accommodate the public, and to do the large business now done by the volunteers, it cannot escape entailing expense on the government, and so diminishing its revenue; for to do the work will require either the time of the officers themselves, in which event they will need additional clerks to do their present work or the time of clerks engaged for the business and paid the wages necessary to secure honesty and capacity; and finally that the officers named, already busied with onerous duties, not being (most of them) under any obligation to enter into the business, are unlikely to enter into it, because a certain risk at-

tends it when managed by subordinates, and the profits to be possibly derived from it are very small, and, if this state tax be well laid, may be made yet smaller by taxation, as they will not be, *quâ* sellers, officers of the government, the trade being optional with them.

If these views are correct, it would follow that state taxation of a stock in trade of revenue stamps has a direct tendency to retard, impede, burden and in a manner control the operations of a constitutional law enacted by congress to carry into effect a power vested in the national government, and so is forbidden by the principles laid down in *McCulloch* v. *Maryland*, 4 Wheat. 316.

*C. H. Hill*, for the defendants. 1. The provision of the U. S. St. of 1864, *c*. 173, § 161, authorizing the commissioner of internal revenue to sell to and supply collectors and other persons, at his discretion, with stamps, at a certain discount, does not make those buying stamps for the purpose of selling them again officers of the United States. *Osborn* v. *United States Bank*, 9 Wheat. 859, 860, 867. *Melcher* v. *Boston*, 9 Met. 77, 78. *Whitehouse* v. *Langdon*, 10 N. H. 331. Such persons hold the stamps as merchandise; and even admitting that the stamps are themselves instruments of government, and therefore beyond the reach of state taxation, this does not prevent their being indirectly taxed when they constitute a stock in trade, and are held by dealers in them for the purpose of profit and speculation. *Commonwealth* v. *Hamilton Manufacturing Co.* 12 Allen, 298, and 6 Wallace, 632, 638, 639. *Society for Savings* v. *Coite*, 6 Wallace, 594. Otherwise, any stockbroker who deals in government bonds would be exempt from taxation.

2. But revenue stamps and postage stamps belonging to dealers in them are not instruments of government which are exempt from taxation. The reason why instruments of government are said generally to be exempt from taxation is, that states cannot impede the action of the federal government; and this is true. But there are many things issued under the sovereign authority of that government which are taxable in the hands of the subject. Coin is as much an instrument of government as a reve-

nue stamp, yet it was never doubted that a person who owns American coin is taxable for it. The same would be true of the federal currency, and has been decided to be so of the United States "certificates of indebtedness." *People* v. *Hoffman*, 37 N. Y. 9.* The stamps in question had been sold to the plaintiff and were his property. Taxing them would in no way impede or interfere with their use and circulation, or affect the government in any way. It would simply reduce the plaintiff's profits, which is the result of taxation in all cases. All exemptions from taxation are to be construed strictly; and if a person does not bring himself clearly within the exemption he is liable to be taxed. *The Queen* v. *Aylesford*, 2 El. & El. 537.

WELLS, J. The plaintiff is not personally subject to taxation in Boston. If he can be taxed there at all, it is only by virtue of the special authority derived from the first clause of the Gen. Sts. *c.* 11, § 12. The tax, in such case, is laid upon property; which is regarded as having its location where the business, to which it is incident, is carried on, and where the owner hires or occupies a manufactory, store, shop or wharf.

It might be questioned whether an office, occupied for the sale of internal revenue stamps, comes within the provisions of the statute. *Huckins* v. *Boston*, 4 Cush. 543. But the plaintiff does not take this point. He relies entirely upon the ground that he is a *quasi* officer of the government of the United States; that his business is in a measure a service rendered to that government; that the tax is a burden imposed upon that business, and thus, to that extent, an obstruction to that service.

There are two conclusive answers to this position. One is, that the plaintiff does not hold such relations to the general government, either personally or in respect to his business, as to entitle him to the exemption he claims. The case of *Melcher* v. *Boston*, 9 Met. 73, is decisive of this question. The other is, that the tax is not laid upon the plaintiff, either personally or in respect to his business. It is not governed by the amount of

---

* Since reversed in the supreme court of the United States. See *The Banks* v. *The Mayor*, 7 Wallace, 16.

business he may transact. It does not depend at all upon the fact whether he may make many or few sales, or none at all. The tax is upon the property in his possession and ownership, held for the purposes of business at the place where the tax is laid.

The property, which constituted the stock in trade of the plaintiff, and upon which the tax was imposed, consisted entirely of internal revenue stamps. These are instruments of the general government for the performance of its legitimate functions. They themselves represent the tax which that government levies upon the business of the community, for its own support. They are the drafts by which that tax is received in advance, and the vouchers by which its payment is made manifest. It is their capacity to answer these purposes which gives them value as property. They have no value otherwise. We think it clear therefore that, as property, they are exempt from all state and local taxation.

The defendants' counsel argues that, as the tax is upon " stock in trade," the revenue stamps are not thereby subjected to any tax directly. But we do not understand that " stock in trade " constitutes a separate subject of taxation, independent of the personal property in which it consists. The subjects of taxation are enumerated in §§ 3, 4, of the same chapter of the statutes, and § 12 relates only to the place where property so enumerated shall be held liable to taxation. The term " stock in trade " is used for convenience of description, and not as, in itself, a distinct subject of taxation. It differs essentially from the term " capital stock" when applied to corporate bodies. The decisions in regard to taxes upon corporate capital stock do not apply to this case.

The tax in this case, being laid wholly upon property exempt from such taxation, is illegal and void ; and the plaintiff is en titled to recover it back.          *Judgment for the plaintiff.*